No. 03-559

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 238

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

MICHAEL McINTIRE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. DDC 03-017(A)
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Vince van der Hagen, Lawrence A. LaFountain, Deputy Public Defenders,
Great Falls, Montana

       For Respondent:

           Honorable Mike McGrath, Montana Attorney General, John Paulson,
Assistant Attorney General, Helena, Montana; Brant Light, Cascade County
Attorney, Susan Weber, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  December 19, 2003

Decided:  August 31, 2004

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Michael McIntire was convicted of burglary in the District Court for the Eighth Judicial District, Cascade County. He appeals from the court's sentencing order requiring him to pay restitution. We affirm.

¶2      We address the following issues on appeal:

¶3      1. Whether the District Court erred when it ordered McIntire to pay restitution on two counts of misdemeanor forgery when those charges had been dismissed.

¶4      2. Whether the District Court erred when it ordered McIntire to pay restitution as a condition of his suspended sentence.

### Factual and Procedural Background

¶5      On January 9, 2003, the Cascade County Attorney filed an Information charging McIntire with one count of felony burglary, one count of misdemeanor theft, and two counts of misdemeanor forgery. In the affidavit supporting the State's motion for leave to file the Information, the investigating officer stated that McIntire's neighbor died on November 3, 2002, and that McIntire admitted entering her apartment shortly after her death and removing her computer. The officer also stated that McIntire admitted forging two of his deceased neighbor's checks, making them payable to himself in the amounts of $200 and $250. Those checks were cashed on November 14 and 15, 2002.

¶6      McIntire entered into a plea agreement with the Cascade County Attorney on May 7, 2003. In the plea agreement, McIntire agreed to plead guilty to the charge of burglary and the county attorney agreed to dismiss the misdemeanor theft and forgery charges. The

county attorney also agreed to recommend to the court that McIntire be sentenced to a three-year suspended sentence. The plea agreement specified that the county attorney may recommend restitution to any victim.

¶7     On May 27, 2003, the District Court accepted McIntire's *Alford* plea after receiving the testimony of the investigating officer and finding a sufficient factual basis for the burglary charge. *See North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The court conducted a sentencing hearing on June 24, 2003, wherein the matter of restitution was discussed at length. Defense counsel argued at the hearing that because the forgery charges were dismissed as part of the plea agreement, McIntire could not be required to pay restitution for the checks. Defense counsel also argued that there was no "victim" with respect to the dismissed forgery charges, thus the court lacked specific statutory authority to impose restitution.

¶8     The prosecutor argued, on the other hand, that the restitution order was appropriate because McIntire removed the checks from the victim's apartment during the burglary and that forging the checks was part of the same transaction as the burglary. The prosecutor also argued that there was a victim to the forgery--the estate of McIntire's neighbor.

¶9     The District Court determined that the burglary and the forgery of the stolen checks were a continuing transaction, hence the court ordered McIntire to pay restitution in the amount of $450. McIntire appeals the District Court's restitution order.

**Issue 1.**

¶10 *Whether the District Court erred when it ordered McIntire to pay restitution on two counts of misdemeanor forgery when those charges had been dismissed.*

¶11 McIntire argues on appeal that the court exceeded its statutory authority by requiring him to pay restitution for offenses for which he was not convicted and which he did not admit to committing. McIntire also argues that because the forgery charges were dismissed, there was no "victim of the offense" as required by § 46-18-201(5), MCA (2001).

¶12 The State argues that the District Court did have statutory authority to order McIntire to pay restitution for funds he received as a direct result of the burglary charge to which he pled guilty. The State maintains that the burglary was sufficiently connected to forging the checks to amount to a continuous criminal transaction and that dismissal of the forgery charges as part of the plea agreement did not deprive the District Court of authority to impose a restitution obligation upon McIntire.

¶13 This Court reviews criminal sentences for legality only, and our inquiry is limited to determining whether the sentence is within the parameters provided by statute. *State v. McLeod*, 2002 MT 348, ¶ 12, 313 Mont. 358, ¶ 12, 61 P.3d 126, ¶ 12. A district court's authority to impose a sentence is defined and constrained by statute, and the court has no power to impose a sentence in the absence of specific statutory authority. *State v. Horton*, 2001 MT 100, ¶ 24, 305 Mont. 242, ¶ 24, 25 P.3d 886, ¶ 24 (citing *State v. Nelson*, 1998 MT 227, ¶ 24, 291 Mont. 15, ¶ 24, 966 P.2d 133, ¶ 24; *State v. Hatfield* (1993), 256 Mont. 340, 346, 846 P.2d 1025, 1029).

¶14 Section 46-18-201(5), MCA (2001), provides, in pertinent part, that

4

if the sentencing judge finds that the victim of the offense has sustained a pecuniary loss, the sentencing judge shall require payment of full restitution to the victim as provided in 46-18-241 through 46-18-249.

The term "victim" is defined as "a person who suffers loss of property, bodily injury, or death as a result of the commission of an offense" and includes "the estate of a deceased or incapacitated victim." Section 46-18-243(2)(a), MCA (2001).

¶15 In the case *sub judice*, McIntire does not dispute that his deceased neighbor (and thus her estate) suffered a loss of property as a result of the commission of an offense. Instead, McIntire maintains that the loss was suffered as a result of the commission of forgery, an offense to which he did not plead guilty, rather than burglary, the offense for which he was sentenced. McIntire argues that since the forgery charges were dismissed, there was no crime to support the order of restitution. For this proposition, McIntire relies on this Court's decisions in *Horton* and *State v. Setters*, 2001 MT 101, 305 Mont. 253, 25 P.3d 893. However, both *Horton* and *Setters* are distinguishable from the present case.

¶16 In *Horton*, this Court held that a defendant who pled guilty to felony DUI as part of a plea agreement in which a separate charge of felony nonsupport was dismissed, could not be ordered to pay child support arrearages as restitution since there was no "victim" of the crime to which he pled guilty and there was no connection between the DUI charge and the child support. *Horton*, ¶¶ 27-28. In *Setters*, decided the same day as *Horton*, we reversed another restitution order, where the defendant pled guilty to tampering with public records, since the restitution pertained only to an unrelated theft charge which had been dismissed pursuant to a plea agreement. *Setters*, ¶ 25. We applied the *Horton* analysis in *Setters* and

5

concluded that the district court lacked statutory authority to order restitution in connection with an unrelated and dismissed charge.  *Setters*, ¶ 28.

¶17    Nevertheless, both *Horton* and *Setters* involved the propriety of restitution orders based upon dismissed charges wholly unrelated to the charges to which the defendants pled guilty.  Contrary to McIntire's assertions, the dismissed charges in the present case are directly related to the burglary charge to which he pled guilty.  The victim of the burglary is the same as the victim of the forgeries and the loss of the victim's property resulted directly from the burglary and McIntire's subsequent acts with the stolen property.

¶18    In addition, we acknowledged in *Horton* and *Setters* that § 46-18-202(1)(e), MCA (renumbered in 1999 as § 46-18-202(1)(f), MCA), permits a sentencing court to impose any reasonable restriction or condition upon a sentence, including any restriction or condition considered necessary for rehabilitation of the defendant or for the protection of the victim or society.  However, we noted in both *Horton* and *Setters*, that our previous interpretation of that statutory provision required the restriction or condition to have some correlation or connection to the underlying offense for which the defendant is being sentenced.  *Horton*, ¶ 28; *Setters*, ¶ 27 (citing *State v. Ommundson*, 1999 MT 16, ¶ 11, 293 Mont. 133, ¶ 11, 974 P.2d 620, ¶ 11).  We held that such a connection did not exist in either *Horton* or *Setters*, thus the sentencing courts in those cases were without authority to impose restitution.  Here, however, there is a direct connection and correlation between the burglary and the pecuniary loss to the victim.  Hence, § 46-18-202(1)(f), MCA, authorizes the restitution order as reasonably necessary for McIntire's rehabilitation and for the protection of society.

6

¶19 Accordingly, we hold that the District Court did have the statutory authority to order McIntire to pay restitution for the checks stolen from the victim during the burglary and the subsequent forgery of those checks.

**Issue 2.**

¶20 *Whether the District Court erred when it ordered McIntire to pay restitution as a condition of his suspended sentence.*

¶21 McIntire argues on appeal that the District Court was without statutory authority to order restitution because restitution may only be ordered when a defendant receives a deferred sentence. Relying on a footnote in *Horton*, McIntire contends that § 46-18-201, MCA (2001), restricts restitution orders to cases involving deferred impositions of sentence and that a district court is without statutory authority to impose payment of restitution as a condition of a suspended sentence. *See Horton*, ¶ 28 n.3.

¶22 McIntire's claim is based upon an apparent codification error arising from the 1999 Montana Legislature's amendments to § 46-18-201, MCA, the general sentencing statute. The 1999 amendments reorganized and renumbered the provisions concerning the sentencing judge's dispositional options. Provisions concerning suspended sentences, which had previously been contained in subsection (1) along with the provisions concerning deferred sentences, were removed from subsection (1) and placed in a separate section. The subsection on restitution, which was renumbered as subsection (5), was not changed to reflect the reorganization of the statute. Thus, because of this error, it appeared that a district

7

court could require restitution only in cases involving deferred imposition of sentence and not in cases involving suspended execution of sentence.

¶23 We recently discussed this issue at length in *State v. Heath*, 2004 MT 126, 321 Mont. 280, 90 P.3d 426, wherein we compared the various statutes pertaining to restitution and examined the legislative history of § 46-18-201, MCA (1999). We concluded in *Heath* that

> the reference made in subsection (5) of § 46-18-201, MCA (1999), to "the penalties imposed pursuant to *subsection (1)*" was a simple codification error which was not intended to make any change in the substance or effect of the statute. The re-codification of the statute . . . resulted in a cross reference error which was completely inconsistent with clear legislative intent. We further conclude that it was the Legislature's full intention that subsection (5) cross-refer, not to subsection (1), but to subsection (4), which contains all of the penalties and conditions which may be imposed for both deferred impositions of sentences and for suspensions of sentences.

*Heath*, ¶ 36 (emphasis in original). Based on these conclusions, we stated in *Heath* that we would "not permit legislative intent to be thwarted, and the whole of the judiciary's sentencing authority to be undermined, by a mere scrivener's error." *Heath*, ¶ 37.

¶24 Consequently, we held in *Heath* that the 1999 amendments to § 46-18-201, MCA, do not limit a court's authority to impose restitution to cases in which sentencing has been deferred. Rather, restitution is a sentencing option whenever the sentencing court considers it necessary for rehabilitation or for the protection of the victim or society, and there is an appropriate correlation to the offense committed. *Heath*, ¶ 38.

¶25 Having already found that such a correlation does exist in this case, we hold that the District Court did not err in ordering McIntire to pay restitution as a condition of his suspended sentence.

¶26    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE